**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SHANNON KNOWLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-218-W-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Shannon Knowles petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("the Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. An administrative law judge ("ALJ") found she had multiple severe impairments, including the mental impairments of post-traumatic stress disorder, generalized anxiety disorder, and major depressive disorder. He found she retained the residual functional capacity ("RFC") to perform work as a fruit distributor, small products assembler, or bottling line attendant. The ALJ thus found her not disabled.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

### Background

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff applied for benefits in 2011, alleging a disability onset

date of July 20, 2010.  After the Commissioner denied her applications, Plaintiff requested an

ALJ hearing.  On November 7, 2013, the ALJ found that Plaintiff was not disabled.

The Social Security Administration Appeals Council denied her request for review on

January 26, 2015, leaving the ALJ's decision as the Commissioner's final decision.  Plaintiff has

exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C.

§§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is

limited to determining whether the Commissioner's findings are supported by substantial

evidence on the record as a whole.  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind

would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment,

the court considers evidence that detracts from the Commissioner's decision, as well as evidence

that supports it.  *Id.*  The court must "defer heavily" to the Commissioner's findings and

conclusions.  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).  The court may reverse the

Commissioner's decision only if it falls outside of the available zone of choice; a decision is not

outside this zone simply because the evidence also points to an alternate outcome.  *Buckner v.

Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a sequential evaluation process to determine whether a

claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

medically determinable impairment that has lasted or can be expected to last for a continuous

period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).  This five-step process considers

whether: (1) the claimant is employed; (2) she is severely impaired; (3) her impairment is, or is comparable to, a listed impairment; (4) she can perform past relevant work; and if not, (5) if she can perform any other kind of work.  *Andrews*, 791 F.3d at 928.

Plaintiff argues that the ALJ erred by failing to properly weigh the evidence of record in formulating her RFC at Step Four.  Specifically, she argues the ALJ improperly rejected a mental medical source statement completed by Michael J.S. Gardner, Ph.D. ("Dr. Gardner"), on October 2, 2013.  R. at 782–87.  In that statement, Dr. Gardner rated several of Plaintiff's mental abilities as "fair" and "poor to none," though he did not indicate what exactly those terms meant.[1]  He supplemented his ratings, "Each if not all categories represent abilities affected by cognitive functioning," offering the example of Plaintiff's nightmares.  R. at 785.  He opined that she would need to miss, on average, more than three days a month from work.  R. at 784.  He assessed a Global Assessment of Functioning ("GAF") score of 45.  *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) (tying scores of 41–50 to serious psychological symptoms or a serious impairment in occupational functioning).

The ALJ offered three reasons for rejecting Dr. Gardner's statement.  R. at 22.  First, medical evidence of record, including objective testing, did not support the restrictions found by Dr. Gardner.  Second, Plaintiff's daily activities are inconsistent with the opinion.  Third, his opinion was unaccompanied by treatment notes.

The ALJ must rely on the medical evidence to determine a claimant's RFC.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control."  *Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014).  The ALJ may discount or disregard a treating physician's opinion "where

---

[1] Plaintiff twice recites lengthy definitions of "fair" and "poor to none," citing specific pages in Dr. Gardner's opinion.  Pl.'s Br. 11–12, 17 (Doc. 7) (citing R. at 785–86).  However, Dr. Gardner's opinion does not contain any such definitions, nor can the Court tell where in the record Plaintiff's definitions come from.

other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Andrews*, 791 F.3d at 928. "[T]he ALJ must give good reasons for the weight apportioned." *Id.*

Substantial evidence on the record as a whole validates the three reasons given by the ALJ. First, the medical evidence—from other doctors and in Dr. Gardner's own notes—does not conclusively support his extreme findings. Granted, at least six Pathways opinions, written in the year before Dr. Gardner's, do support his findings. R. at 703 ("[Plaintiff] visibly flustered and frustrated."), 731 (describing Plaintiff's high "paranoic ideation," irritability, anxiety, difficulty concentrating and focusing, and memory challenges"); *see also* 738, 740, 746, 749, 755. Three years before Dr. Gardner's statement, another psychologist gave Plaintiff a GAF score of 48. R. at 773. However, although Dr. Gardner claimed that "each if not all categories" of Plaintiff's mental abilities were affected by her cognitive functioning, he never performed any objective cognitive testing to bolster his conclusions. R. at 22; *see Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability."). Further, much more recently than the score of 48, Plaintiff was given a daily living assessment of 55. R. at 695; *see also Doolittle v. Colvin*, No. 13-CV-04261-C-DGK-SSA, 2014 WL 7369635, at *2 (W.D. Mo. Dec. 29, 2014) (explaining why GAF scores carry minimal probative value).

Second, Plaintiff reported many daily activities which the ALJ fairly viewed to undercut Dr. Gardner's medical source statement. She reported: crying spells, R. at 771; social isolation, R. at 749; being "consumed" with fear, paranoia, and anxiety, R. at 47, 749; difficulty riding in cars due to pain and anxiety, R. at 57, 769; and an inability to cook, R. at 60.

At the same time, however, the record shows that she: has a part-time job working with children that she "loves," R. at 695, 699; cleans houses for her brother in law, R. at 714, 718; feels very comfortable at work, which she described as "stress free", R. at 700; cares for twins and then acting as legal guardian for a friend's five children that moved in with her, R. at 706, 729; tried to take in and foster another young girl, R. at 693; washes a friend's hair and does her nails, R. at 37–38, 274–75; and spends time with her family, R. at 242–52. The ALJ could conclude that these activities, not the limitations in Dr. Gardner's opinion, were the best evidence of Plaintiff's RFC. *See Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) (rejecting a physician's opinion where the claimant's activities of daily living did not reflect the limitations found in the opinion).

Third, his opinion was vague and unsupported by narrative discussion. Dr. Gardner assigns several of Plaintiff's abilities "fair" or "poor to none" ratings, but never explains what those values mean beyond the highly generic, default explanations. *E.g.* R. at 785 (defining "fair" as, "Ability to function in this area is seriously limited, but not precluded"). He does not annotate his commentary, such as his comment, "It is hoped that her sleep situation improves— even if this occurs, chronic pain seems likely to remain an issue." R. at 785. His failure to do so is especially troubling because he assessed apparently extreme limitations on a wide range of mental abilities. For this reason, the ALJ did not err in rejecting Dr. Gardner's medical source statement. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (permitting the ALJ to discount a "cursory checklist statement [that] includes significant impairments and limitations that are absent from his treatment notes and [the] medical records").

Reviewing all this record evidence, a reasonable mind could agree and reject Dr. Gardner's opinion. Therefore, the Court must affirm the Commissioner's decision denying Title II and XVI benefits to Plaintiff. *See Andrews*, 791 F.3d at 928.

**Conclusion**

In view of the foregoing, the Commissioner's administrative action is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 14, 2016                           /s/ Greg Kays
                                                  GREG KAYS, CHIEF JUDGE
                                                  UNITED STATES DISTRICT COURT